

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00447-CV

**IN THE INTEREST OF C.M.**, A.S., and D.S., Children

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-01936
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Sandee Bryan Marion, Justice
               Marialyn Barnard, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  October 16, 2013

AFFIRMED

After a bench trial in June 2013, the trial court terminated Appellant's parental rights to three children—sixteen-year-old C.M., ten-year-old A.S., and seven-year-old D.S.  In support of its order, the trial court found that Appellant constructively abandoned the children and failed to comply with the provisions of her service plan after the children were removed for abuse or neglect, and that termination was in the best interest of the children.  *See* TEX. FAM. CODE ANN. 161.001(1) (N), (O), (2) (West Supp. 2012).  On appeal, Appellant challenges only the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her rights is in the children's best interest.  We hold the evidence is sufficient and affirm the termination order.

Before a trial court may terminate the parent-child relationship, it must find by clear and convincing evidence (1) one of the statutory grounds for termination and (2) that termination is in the child's best interest. *Id.* § 161.001. In making a best-interest determination, the factfinder looks at the entire record and considers all relevant circumstances. *See In re C.H.*, 89 S.W.3d 17, 27-29 (Tex. 2002). Evidence establishing one of the grounds for termination under section 161.001(1) may be probative of a child's best interest. *Id.* at 28. In addition, the Texas Supreme Court has enumerated some factors that may be relevant in ascertaining the best interest of a child: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The list of factors is not exhaustive, and not every factor must be proved to find that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27.

In her sole point of error, Appellant contends the evidence is insufficient to support the court's best interest finding because the Department of Family and Protective Services did not present any evidence of, and consequently the trial court "ignored," several of the Holley factors: the desires of the children, their current and future emotional and physical needs, and any current or future emotional or physical danger to the children. She contends the only evidence presented in support of the trial court's finding was the caseworker's opinion that termination would be in the children's best interest. We disagree.

The Department presented evidence that it had received a referral regarding the children in February 2012, due to concerns that Appellant was abusing prescription drugs and that she had physically threatened one of the children while they were on a public bus. The Department attempted to work with Appellant, with no progress, until September 2012, when this case was filed. At that time, all three children were living with their maternal grandmother. The oldest child, C.M., had been living with her grandmother for a number of years. At trial, Appellant testified she had assumed she had lost her rights to C.M. years earlier, and only recently learned that she had not. The two younger children were temporarily placed with their grandmother.

Appellant and her former husband—the father of the two youngest children—each met separately with the Department's caseworker in October 2012. The caseworker discussed the service plan with the parents and explained to them what needed to be done to achieve reunification with the children. Both of the parents signed the plans.

The caseworker testified that A.S.'s and D.S.'s father became actively engaged and fully complied with his plan. After his therapist recommended the children be placed with him and a positive home visit, the Department placed A.S. and D.S. in his care. The caseworker testified that A.S. and D.S. want to stay with their father permanently and that they are happy and healthy. She believes the children's father is meeting their physical and emotional needs. The Department and the children's attorney ad litem both recommended that A.S.'s and D.S.'s father be named their permanent managing conservator, and the trial court so ordered.

Appellant signed a service plan that provided for two supervised visits per month with her children. The caseworker testified she explained to Appellant that Appellant was required to provide a clean urine sample before she would be allowed visitation. Appellant submitted a clean sample in October 2012; however, the caseworker was unable to contact Appellant thereafter to schedule a visit with the children. The caseworker testified that the telephone number she had for

Appellant did not work, and the only way she had to contact Appellant was through e-mail. She testified she scheduled a urine test for Appellant each month from October 2012 through May 2013, and notified Appellant of the appointments by e-mail. Appellant did not make any of the appointments, and thus did not have any visits with her children during the ten months the case was pending.

In an effort to resolve the issues that led to removal of the children, Appellant was required to participate in individual therapy, submit to a psychological evaluation and complete all recommendations for treatment, submit to a drug and alcohol assessment and follow all recommendations, and attend and complete several specified classes. Additionally, Appellant understood that she was required to obtain and maintain stable employment and suitable housing.

The caseworker testified Appellant periodically called her or responded to her e-mails, but Appellant made only minimal progress in her service plan. They met in person in March 2013, when the caseworker again reviewed the service plan with Appellant. The caseworker testified Appellant indicated she wanted to start services. The caseworker scheduled a urine test and resubmitted all the service authorizations and referrals and told Appellant they would be available in a few days. However, the caseworker did not hear from Appellant again until she saw her at a hearing in July, the week before trial.

By the time of trial, Appellant had completed one of the required classes and had submitted to the drug and alcohol assessment. However, she did not participate in the recommended outpatient treatment, did not submit to a psychological examination, did not attend any individual therapy sessions, and did not attend the other required classes. On the day of trial, Appellant gave the caseworker a pay stub reflecting employment with a temporary agency and showing payment for one day of work. Appellant also notified the caseworker on the day of trial that she had found housing.

At the conclusion of her testimony, the caseworker stated that in her opinion the children's best interests would be served by terminating Appellant's parental rights. She recommended that C.M. remain with her grandmother, who wants to adopt her, and that the younger children be placed with their father. The Department's attorney and the children's attorney ad litem concurred with these recommendations.

Appellant testified at trial that she has remarried and only recently obtained housing and employment. However, she conceded that the place she was living at the time was not large enough for her children and that she was not in a position at that time to fully care for them. Appellant testified she wants to work towards being reunited with her children, and explained that she had not visited the children during the case because she believed she had to complete part of the service plan before she could see them and because the caseworker told her the children did not want to see her. She also testified she did not keep in contact with the caseworker because she did not have a telephone and did not have regular access to a computer or transportation. Appellant admitted she had received emails from the caseworker, including notices of urine test appointments.

Appellant testified she completed parenting classes and attended a drug and alcohol assessment. She acknowledged that it was recommended she obtain outpatient treatment because of her history of drug use, but that she failed to do so. Appellant denied any current drug use and testified she did not obtain the recommended treatment because she had started working.

It is apparent from the record that Appellant is not capable of meeting the children's needs. Although she had recently obtained housing and employment at the time of trial, there is no indication in the record that either the housing or employment was stable. Appellant did not take advantage of the extensive services made available to help address her substance abuse issues and alleviate the problems that led to the children's removal. Although she testified this was because

she did not have access to a telephone, computer, or transportation, she had ample opportunity to bring those issues to the attention of the caseworker or the court at any of the five hearings held during the pendency of the case, but she failed to do so. Appellant failed to take the relatively simple steps necessary to have visits with her children while the case was pending. After reviewing the entire record, we conclude a reasonable trier of fact could have formed a firm belief or conviction that it is in the children's best interest to terminate Appellant's parental rights. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *In re C.H.*, 89 S.W.3d at 25. We therefore affirm the trial court's order.

Luz Elena D. Chapa, Justice